```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION

MAURICE B. WALTERS,           *
                              *
     Plaintiff,               *
                              *
vs.                           *     CASE NO. _____
                              *
CITY OF SUWANEE, BRANDON      *
WARREN, and LOWE'S            *     JURY TRIAL DEMANDED
HOME CENTERS, LLC,            *
                              *
     Defendants.              *
```

**COMPLAINT**

NATURE OF THE CASE

1.

This is a wrongful arrest case. After Lowe's negligently reported to the police that Maurice Walters had sped through the store's parking lot, Suwanee Police Officer Brandon Warren (recklessly) applied for an arrest warrant of Mr. Walters. These events caused Mr. Walters to spend nearly two weeks in a Florida jail on baseless charges. With this complaint, Mr. Walters seeks damages and his reasonable attorney's fees.

PARTIES

2.

Plaintiff Maurice B. Walters ("Maurice") is a resident of Gwinnett County, Georgia.

3.

Defendant City of Suwanee ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued.

4.

Defendant Corporal Brandon Warren ("Cpl. Warren") is or was employed by the Suwanee Police Department. Cpl. Warren is sued in his individual capacity. At all times relevant to this complaint, Cpl. Warren acted under the color of law.

5.

Defendant Lowe's Home Centers, LLC ("Lowe's") is a North Carolina limited liability company authorized to conduct business in Georgia. Lowe's operated the store in question (#2908) on November 11, 2023, which is located at 3260 Lawrenceville Suwanee Road, Suwanee, GA 30024. Lowe's may be served with process by service on its registered agent, to-wit: CSC of Stephens County, Inc., 597 Big A Road, Toccoa, GA, 30577.

VENUE

6.

All acts or omissions alleged in this complaint occurred in the Northern District of Georgia, where at least one of the defendants resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

## JURISDICTION

7.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

8.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

9.

Maurice timely provided ante litem notice to the City.

## FACTS

### November 11, 2023:

### The police chase near Lowe's

10.

On Saturday, November 11, 2023, at around 12:28 p.m., Cpl. Warren was monitoring traffic at Northolt Parkway and Wanstead Park Drive.  That is when he saw a white Audi Q7 traveling north on Northolt Parkway passing vehicles at a high rate of speed.

11.

After driving through the Lowe's parking lot (located at 3260 Lawrenceville Suwanee Road), the Audi Q7 turned onto a private road and then out of sight.

12.

Rather than continuing his chase, Cpl. Warren returned to Lowe's.  (He believed that the Audi Q7 had passed a FLOCK camera license plate reader in the Lowe's parking lot.)

13.

Because the manager with access to the FLOCK system was not at Lowe's, Cpl. Warren left his business card and asked that the manager call him when they had access to the FLOCK camera footage.  Cpl. Warren exited Lowe's at around 12:34 p.m. and left for the police station.

## The Walters visit Lowe's

14.

About 15 minutes later, Maurice and his wife Monyetta arrived at Lowe's in their light-beige Audi Q8.  Monyetta

was driving.  She pulled into the parking lot at around 12:47 p.m. and, because they knew precisely what they wanted to buy, the Walters were able to purchase their merchandise and reach check out at 1:00 p.m.

15.

The Walters, with Monyetta driving, left the Lowe's parking lot in their Audi Q8 minutes later, heading home.

### Cpl. Warren continues his investigation

16.

Back at the police department, at around 12:44 p.m. that same day, Cpl. Warren received a phone call from the Senior Asset Protection Manager with Lowe's, Bryan Haire.  Hoping to get the FLOCK video footage, Cpl. Warren explained to Haire that he had attempted to conduct a "traffic stop on a white van" at around the "12:27 to 12:30 time frame" and the driver sped away.  Haire understood the request and the call ended.

17.

Moments later (at around 12:50 p.m.) Haire called Cpl. Warren back and explained that he had reviewed the video footage and had seen the vehicle speeding through the parking lot.

18.

Because Cpl. Warren was not able to see the video

firsthand, he asked Haire whether he (Haire) could see the driver on the video footage, and Haire answered the driver "may" have been a white or Hispanic male.

19.

In that call, Cpl. Warren asked Haire if he would upload the video footage to a link and send it to him. Haire responded, "Unfortunately I can't" and explained that Lowe's would need a formal request for the video on police department letterhead stating the date and time of the incident because "Legal" would need to review the request.

20.

Concluding that call, Haire told Cpl. Warren that Legal's review probably would not occur until Monday, i.e., after the weekend.  Haire did, however, say that he would "unofficially" send Cpl. Warren a screen shot of the license tag so that Warren would "have something in [his] hand."

21.

Before Cpl. Warren could complete a formal request for the FLOCK footage, he received an email from Haire with a single FLOCK photo of an Audi Q8 with Georgia Tag # CQX3130, indicating that the image was taken that day at "5:47:44 PM" Coordinated Universal Time (UTC), which is 12:47 p.m. in Eastern Standard Time.

22.

Cpl. Warren immediately ran the Audi Q8's tag number through NCIC/GCIC, which indicated that Monyetta and Maurice Walters were the vehicle's registered owners.  In his computer search, Cpl. Warren also learned that Maurice is African American.  After finding a contact phone number for Monyetta, he called and left a message for her.

23.

Monyetta called Cpl. Warren back at around 1:30 p.m. on the same day.  (She called from her Audi Q8, just as she and Maurice were pulling in their driveway; the call was on her Audi's speaker phone.)

24.

In that call, Cpl. Warren asked Monyetta if she knew where "her vehicle" was, and she replied, "I'm sitting in it."  Cpl. Warren explained that her vehicle had eluded a traffic stop in Suwanee earlier that day.

25.

In response to this accusation, Maurice told Cpl. Warren that they were not involved in an attempted stop, adding, "You got the wrong tag, or somebody gave you some wrong information."  Cpl. Warren ended the call by telling the couple that "investigators will reach out to you."

26.

After this phone call, Cpl. Warren called Haire. He asked Haire to clarify his statement about the race of the driver. Haire told him that, upon further review, he had mistakenly thought a reflection was a driver, i.e., Haire could identify neither the race nor sex of the driver.

27.

Around the same time, Cpl. Warren signed a Lowe's "Evidence Release" form on behalf of the Suwanee Police Department. Where the form requires a "Description of Information or Evidence," Warren stated "Video and Flock is requested for Lowes store parking lot on 11/11/2023 at 12:47pm - 12:50pm."

28.

Shortly after 3:00 p.m. that day, Cpl. Warren sought the 'on-call' magistrate and applied for two arrest warrants for Maurice. The first warrant application (Warrant No. 23W-19794) provided:

> Personally appeared the undersigned prosecutor, B. Warren who, on oath, says that, to the best of the prosecutor's knowledge and belief. the above named accused, between 11/11/2023 12:28:00 PM and 11/11/2023 12:33:00 PM at northolt parkway, SUWANEE, GA, 30024, GWINNETT COUNTY did commit the offense of DRIVING· SPEEDING [99] [MIS] (Misdemeanor) in violation of O.C.G.A. 40-6-181(a) and against State of GEORGIA and the laws of the State of GEORGIA. The facts of this affidavit for arrest are based on: said accused did drive a

> motor vehicle on Northolt Pkwy/Wanstead Park Dr. Suwanee, GA. 30024, at a speed of 58 M.P.H. which speed was in excess of the posted speed limit of 30 M.P.H.
>
> Prosecutor makes this affidavit that a warrant may be issued for the accused person's arrest.

The second warrant provided:

> Personally appeared the undersigned prosecutor, B. Warren who, on oath, says that, to the best of the prosecutor's knowledge and belief. the above named accused, between 11/11/2023 12:28:00 PM and 11/11/2023 12:33:00 PM at 3260 Lawrenceville-Suwanee Rd, Suwanee, GA, 30024, GWINNETT COUNTY did commit the offense of FLEEING OR ATTEMPTING TO ELUDE A POLICE OFFICER FOR A FELONY OFFENSE [99] [FEL] (Felony) in violation of O.C.G.A. 40-6-395(b)(5)(A) and against State of GEORGIA and the laws of the State of GEORGIA. The facts of this affidavit for arrest are based on: said accused, while driving a vehicle, did while fleeing or attempting to elude a pursuing police vehicle or police officer flee in traffic conditions which placed the general public at risk of receiving serious injuries by driving through two shopping center parking lots at high rate of speed and disregarding Traffic Control devices with pedestrians and vehicles in the area.
>
> Prosecutor makes this affidavit that a warrant may be issued for the accused person's arrest.

29.

Only after obtaining these arrest warrants did Cpl. Warren submit the formal evidence request form to Lowe's "to receive the full videos and FLOCK camera information for the incident." That is when Lowe's told him that this evidence "should be ready around 11/13/2023."

## April 13, 2024:

### Maurice's arrest and lengthy detention

30.

About five months later, on April 13, 2024, Monyetta and Maurice had just docked in Orlando after a two-week Carribean cruise (with family and friends) to celebrate their 20th wedding anniversary.

31.

Before he could disembark the ship, Maurice was detained by law enforcement and eventually deputies from the Brevard County Sheriff's Office took Maurice to the Brevard County Jail on Cpl. Warren's arrest warrants.

32.

Maurice remained in Brevard County Jail until April 24, when two Gwinnett County Sheriff's Office deputies arrived to take him to the Gwinnett County Jail.

33.

Maurice was released from Gwinnett County Jail in the early morning hours of April 25, after having spent nearly two weeks in custody.

34.

The Gwinnett County District Attorney's Office formally dismissed the arrest warrants (charges) by notice to the Clerk filed on July 16, 2024.

<u>Count 1</u>

<u>42 U.S.C. § 1983: Malicious Prosecution</u>

<u>in violation of the Fourth Amendment</u>

(Defendant Cpl. Warren)

35.

Maurice incorporates paragraphs 1 through 34 here by this reference.

36.

Cpl. Warren initiated a criminal prosecution against Maurice for alleged violations of O.C.G.A. §§ 40-6-395 and 40-6-181, and he knew or should have known that no arguable probable cause existed to believe that Maurice had committed any crime recognized by law.

37.

Cpl. Warren initiated the arrest and continued the prosecution of Maurice by making false and reckless statements and material omissions in his arrest warrant application, thus displaying malice and a reckless disregard for Maurice's civil rights.

38.

The arrest and prosecution forced Maurice to spend considerable time in jail.

39.

This criminal prosecution terminated favorably for

Maurice.

40.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without arguable probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

41.

As a result of his arrest and prosecution, Maurice suffered physical, emotional, mental, and financial injury, entitling him to recover compensatory and punitive damages against the defendant in an amount to be determined by the enlightened conscience of the jury.

### Count 2

### O.C.G.A. § 51-7-40: Malicious Prosecution

(Defendant Cpl. Warren)

42.

Maurice incorporates paragraphs 1 through 34 here by this reference.

43.

Cpl. Warren initiated a criminal prosecution against Maurice for allegedly violating O.C.G.A. §§ 40-6-395 and 40-6-181, and knew or should have known that no probable cause existed to believe that Maurice had violated this Georgia

statute or committed any crime recognized by law.

44.

This criminal prosecution terminated favorably for Maurice.

45.

As a result of this arrest proceeding, Maurice has suffered physical, emotional, mental and financial injury, entitling him to recover compensatory and punitive damages against Cpl. Warren for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience of the fair and impartial jury.

## Count 3

## Negligence

(Defendant Lowe's)

46.

Maurice incorporates paragraphs 1 through 34 here by this reference.

47.

Bryan Haire was acting within the scope of his employment and in furtherance of Lowe's throughout his interactions with Cpl. Warren on November 11, 2023.

48.

On November 11, 2023, Lowe's had a corporate policy that addressed releasing evidence to law enforcement in aid

of a criminal investigation ("the Policy").

49.

The Policy required that any law enforcement agency desiring evidence from a store's video camera surveillance system to submit a written request to Lowe's on the agency's letterhead. And once received by Lowe's, the request would be routed to a designated legal advisor for review and approval before the evidence could be released.

50.

Haire violated the Policy on November 11, 2023, by providing Cpl. Warren with a photo from the store's FLOCK video footage showing Maurice's Audi Q8 (and license plate) without first receiving (1) a written request for the FLOCK footage from the Suwanee Police Department, and (2) approval from the company's designated legal personnel.

51.

Lowe's owed a legal duty to Maurice (its customer) to have at least a reasonable suspicion that he had engaged in a criminal act before calling the police to implicate him in a suspected crime, a duty that it breached by providing the police with Maurice's license plate number on November 11, 2023, and which breach proximately caused injury and damages to Maurice.

Count 4

Municipal Liability - Law Enforcement Activity

(Defendant City)

52.

Maurice incorporates paragraphs 1 through 34 here by this reference.

53.

This Count is alleged against the City of Suwanee.

54.

Maurice timely provided ante litem notice to the City.

55.

The City has purchased liability insurance from Georgia Interlocal Risk Management Agency ("GIRMA") that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions. That GIRMA policy was in effect at all times relevant to this complaint.

56.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Suwanee.

57.

During the course of his employment and while fulfilling his official duties, Cpl. Warren was reckless in preparing an arrest warrant application accusing the wrong

person of a crime.

58.

The City is liable for the tortious actions of Cpl. Warren under the doctrine of respondeat superior for violations of state and federal law.  Under that doctrine, the City is not entitled to present a defense of official immunity.

Count 5

O.C.G.A. § 13-6-11: Attorney's Fees

(All Defendants)

59.

Maurice incorporates paragraphs 1 through 34 here by this reference.

60.

By the acts and omissions specified above, as well as other conduct, the defendants have acted in bad faith, been stubbornly litigious and caused Maurice unnecessary trouble and expense.

61.

As a result of the defendants' actions, Maurice is entitled to recover his actual expenses of litigation, including attorney's fees, from the defendants.

**WHEREFORE**, Maurice prays:

(a)  that as to Counts 1 through 4, the Court award

       Maurice damages against the defendants, in an amount to be determined by the enlightened conscience of an impartial jury;

(b)   that as to Count 5, the Court award Maurice reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(c)   that he be granted a trial by jury on all issues so triable; and

(d)   that he be granted such other and further relief as this Court deems just and proper.

                                 Respectfully submitted,

                                 BY: /s/ Cary S. Wiggins
                                 Cary S. Wiggins
                                 Ga. Bar No. 757657

WIGGINS LAW GROUP, LLC
Suite 804
260 Peachtree Street, NW
Atlanta, GA 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com